LABOR RELATIONS BOARD, Petitioner, *v.* NATHANIEL I. NAMEROW, doing business under the name of "LA CASA BLANCA", Respondent.

No. 5.  Argued June 18, 1948.—Decided July 6, 1948.

*Luis Negrón Fernández, Attorney General, A. Torres Braschi* and *Carlos J. Faure, Assistant Attorneys General,* and *Yamil Galib Frangie,* for petitioner.  The respondent appeared *pro se.*

MR. JUSTICE SNYDER delivered the opinion of the Court.

This is a petition by the Insular Labor Relations Board pursuant to § 9 (2) (a) of Act No. 130, Laws of Puerto Rico, 1945, as amended by Act No. 6, Laws of Puerto Rico, 1946, to enforce an order of the Board directing an employer to grant certain of his employees fifteen days' vacation with pay.

■■ The employer, Nathaniel I. Namerow, operates a dry cleaning plant under the trade name "La Casa Blanca". On March 20, 1945 he entered into a collective bargaining agreement with his employees, who were represented by *Unión de Trabajadores de la Industria de Laundries*, affiliated with *Federación Libre de Trabajadores de Puerto Rico*. Ramón Arias executed the agreement on behalf of Namerow, as the latter at that time was in the armed forces, stationed in the South Pacific. The agreement was retroactive as of February 1, 1945, and expired on December 31, 1945.

The agreement contained a wage scale classifying the workers according to the nature of their work. The wages for "Spotter" and "Dry Cleaning Machine Operator" were set at "$13.50 plus a bonus of 1.00 . . . $14.50 weekly" and "$15.25 plus a bonus of 1.00 . . . $16.25 weekly", respectively.

While the agreement was in effect, the dry cleaning machine operator and spotter left the employ of Namerow. Pedro Reyes and Gabriel Pacheco, two employees who had been engaged in other tasks, were promoted to these posts. They were paid the weekly salaries established in the agreement for their new jobs, except for the $1.00 bonus. Three weeks after entering upon their new duties, Reyes and Pacheco demanded payment of the bonus on the ground that it was part of their wages. Namerow's wife, who was in charge of the business in his absence, refused to pay them the bonus until in her judgment they had developed the necessary skills required to perform their work adequately.

After various conferences not necessary to state in detail,

on July 26, 1945 the employees went on strike because of the controversy over the payment of the bonus to Reyes and Pacheco. Mrs. Namerow testified that while the strike was in effect she told representatives of the employees that she would make no concessions, but that if the employees returned to work, she would in a week or two determine in her discretion if they had become entitled to the bonus by developing the necessary skills to do their work well. On July 28, 1945 the employees returned to work. Four weeks later, La Casa Blanca began paying Reyes and Pacheco the bonus.

On October 17, 1945 the President and Secretary of the union advised La Casa Blanca by letter that under the agreement every employee had the right to fifteen days' vacation. The letter requested that the vacations be given at the end of the year in the manner most practical and convenient for the industry. On November 21, 1945 Arias replied on behalf of La Casa Blanca. The request for vacations was refused in this letter on the ground that the employees had violated the agreement by strikes for three days instead of submitting the issue of bonus payments for Reyes and Pacheco to arbitration as provided in the agreement.

Charges were filed with the Board by the union against Namerow because of his refusal to grant these vacations. A trial examiner conducted hearings and recommended a proposed order to the Board. After modifying the proposed order in some respects, the Board ordered Namerow to grant fifteen of his employees fifteen days' vacation with pay.[1] Namerow failed to comply with this order, and the Board petitioned us for enforcement thereof.

Namerow contends that the strike of July 26–28 was illegal. He bases this contention in part on a clause in the agreement which provided for a Grievance Committee which,

---

[1] As to six of the employees, there is a proviso with reference to the possible effect of a subsequent collective bargaining agreement which neither of the parties discusses in detail in the briefs and we therefore make no comment thereon.

together with the employer, would adjust all difficulties arising out of interpretation of the agreement. This clause went on to provide that if the Committee and the employer did not agree, the Committee and the employer would select an impartial arbitrator whose decision would be final and binding on the parties. Namerow asserts that his employees breached the agreement by striking without resort to arbitration. And this breach, according to Namerow, terminated the agreement. He also argues that the position his wife took was correct on the merits of the issue which precipitated the strike; namely, the right of Pacheco and Reyes to a bonus without reference to their skill in the performance of their new duties.

We find it unnecessary to determine (a) if Reyes and Pacheco were entitled as a matter of right to a bonus as part of their wages, irrespective of their skill, efficiency or diligence, or (b) if the strike was a violation of the agreement. We assume, without deciding, both points in favor of Namerow. We likewise assume that upon such a breach Namerow was entitled to consider the agreement as terminated.

However, the crux of the case for us is that even assuming that the employees breached the agreement by striking instead of invoking the grievance procedure, the Board found that this breach had been waived by the employer and therefore that the agreement remained in effect after the employees returned to work on July 28.

Namerow argues that the agreement was null and void due to the breach; that his wife orally advised the employees that La Casa Blanca considered the agreement as terminated; and that she permitted the employees to return to work without any agreement. The testimony of Mrs. Namerow supports this contention. Arias also testified that on behalf of Namerow he verbally advised the President of the union and the employees that La Casa Blanca considered the contract null as a result of the strike.

On the other hand, the Vice-President and delegate of the union testified on direct examination that no one told him or the employees when they returned to work that the contract was no longer in effect. On cross-examination, he stated that he did not remember if Mrs. Namerow had made such a statement to him. And the record contains evidence to the effect that for the rest of the year the wages, plus the bonus, provided by the agreement were paid; the working conditions were the same; and the union supplied employees for vacancies, as provided in the agreement. In addition, when the President and Secretary of the Union on October 17, 1945 wrote La Casa Blanca requesting vacations as provided in the contract, Arias did not reply for more than a month. And his reply states only that the strike was a breach of the contract, not that the employer had by virtue of the breach elected to treat the contract as void on July 28 and had so advised its employees at that time. Moreover, the period covered by the agreement expired without any notice in writing by La Casa Blanca to its employees that the employer had elected to treat the agreement as inoperative due to the breach.

If the Board had accepted the testimony of Mrs. Namerow and Mr. Arias that they had orally advised union officials that La Casa Blanca considered the contract void by virtue of the breach and that the employees were returning to work without an agreement, perhaps the Board could not have found as a matter of law that the breach had been waived. But the Board apparently did not give credence to this testimony. And the other evidence in the record does not compel the conclusion that as a matter of fact La Casa Blanca elected to treat the contract as terminated.

We have not been vested with unfettered power to review the findings of fact of the Board. Section 9 (2) (a) of the Act provides that "The findings of the Board as to the facts, if supported by the evidence, shall be conclusive." Only if

there were no evidence in the record in support of the findings of fact of the Board, would we be authorized to hold as a matter of law that the findings of fact, and the order based thereon, could not stand. As we have seen, the case for La Casa Blanca on this point rests almost entirely on the oral testimony of Mrs. Namerow and Mr. Arias. There is no basis for a holding by us that as a matter of law the Board was compelled to believe this testimony.

■ Accepting, as we must, the findings of fact that La Casa Blanca elected to treat the agreement as remaining in effect despite the breach, the Board ruled correctly as a matter of law that under those circumstances the terms of the agreement with reference to vacations continued to bind the employer. See *Hazel-Atlas Glass Co.* v. *National Labor Relations Bd.*, 127 F.2d 109, 118 (C.C.A. 4th, 1942); *Stewart Die Casting Corp.* v. *National Labor R. Board*, 114 F.2d 849, 855–56 (C.C.A. 7th, 1940); *National Labor Relations Board* v. *Aladdin Industries*, 125 F.2d 377, 382 (C.C.A. 7th, 1942).

■ The only remaining issue is whether the fifteen employees covered by the order of the Board were actually entitled to vacations. A clause in the agreement provided for fifteen days' vacation with pay for every employee who worked continuously for a year and a day. The agreement was to be in force for only eleven months—February 1 to December 31, 1945. We agree with the employer that under this clause vacations were earned only by virtue of work beginning February 1. But to hold that only employees who worked for an entire year during the life of an eleven-month contract were entitled to vacations thereunder, would make the vacation clause wholly illusory. The order of the Board covers fifteen employees who worked a full year and a day after February 1, 1945. This of course required them to work beyond the termination date of the agreement to earn their vacations. But to hold as a matter of law that this was improper would deprive the vacation clause of any effect

whatsoever. We find no error in the order of the Board in this respect.

A judgment will be entered providing for enforcement of the order of the Board as prayed for in the petition.

Mr. Justice De Jesús did not participate herein.